UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-

TOWN OF GULF STREAM,

       Plaintiff,

v.

BELLSOUTH TELECOMMUNICATIONS, LLC
d/b/a AT&T SOUTHEAST, a foreign limited
liability company,

       Defendant.
_____/

## COMPLAINT

Plaintiff, the TOWN OF GULF STREAM ("Town"), a municipal corporation and political subdivision of the State of Florida, by and through its undersigned counsel, hereby sues Defendant, BELLSOUTH TELECOMMUNICATIONS, LLC d/b/a AT&T SOUTHEAST ("AT&T"), a foreign limited liability company, and alleges as follows:

### NATURE OF ACTION

1. The Town seeks specific performance and declaratory relief to require AT&T to perform its written agreement to complete the undergrounding of its aerial facilities in the second and final phase of the Town's undergrounding project. With the project nearly complete, AT&T has refused to perform and instead demands that the Town enter into an entirely new contract at ***nearly $1million more*** than the original contract price, which was subject only to differing site conditions or force majeure events not reasonably foreseeable at the time AT&T provided its proposed special construction charge or the time the parties agreed to that charge.

2. To promote and protect the public health, safety, and welfare, in 2015 the Town embarked on a project to convert the overhead utility service facilities of its major utilities, Florida

Power & Light Company ("FPL"), which provides electric service, and Comcast, which provides telecommunications, cable television, and broadband/internet services, to underground facilities. The Town executed underground conversion agreements with FPL and Comcast for this purpose, just as it did with AT&T. FPL and Comcast have now completed or nearly completed their work at the prices contracted upon with the Town and without reporting *any* materially different and non-reasonably foreseeable conditions in the field. AT&T has likewise failed to give the Town prior notice of any such conditions during the past three years. Instead, it has affirmatively represented to the Town on multiple occasions that it did not anticipate "any surprises" and that any additional conduit or hardware it deemed required would be placed *at its own cost.* With another hurricane season having just begun and the COVID-19 pandemic stressing the Town's residents and its finances, the Town seeks this Court's intervention to compel AT&T to finish what it started at the agreed upon price so that the Town can fully and finally complete its undergrounding project.

## PARTIES, JURISDICTION AND VENUE

3. The Town is and was at all times material a municipal corporation of the State of Florida and a political subdivision of the State of Florida with the power and authority to bring this action.

4. AT&T is a Georgia limited liability company that has its principal place of business in Atlanta, Georgia. AT&T is a for-profit, telecommunications utility company that conducts substantial business in the State of Florida, including in the Town of Gulf Stream, Florida.

5. On information and belief, AT&T's sole member is BellSouth, LLC; BellSouth, LLC's sole member is AT&T DataComm, LLC; AT&T DataComm, LLC's sole member is AT&T

DataComm Holdings, LLC; and AT&T DataComm Holdings, LLC is a Delaware limited liability company with a principal place of business in Dallas, Texas.

6. The amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7. This Court has diversity jurisdiction over the Town's claims pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The Court also has jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

9. AT&T is engaged in substantial and not isolated activity within this state and thus subject to personal jurisdiction in this Court. Further, AT&T committed the wrongdoing alleged in the Complaint, including the alleged breach of contract, in Florida.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b)-(d) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

11. As have numerous municipalities throughout the State of Florida, the Town in 2015 passed an ordinance requiring the undergrounding of all facilities for providing electrical power, telecommunications, video, cable television, internet, broadband, and similar services located within its jurisdiction. Town of Gulf Stream Code Art. VI, § 34-103 to §34-109 (the "Undergrounding Ordinance"). Absent certain exceptions, the Undergrounding Ordinance also declared that poles, overhead wires and associated overhead structures were not permitted. *See id.* at §34-103.

12. By the undergrounding project, the Town and its residents sought (1) improved safety through the elimination of the potential for downed electric lines and other hazardous conditions in the event of significant weather events, including tropical storms and hurricanes; (2) improved reliability through the installation of new upgraded utility lines and facilities, and the reduced frequency of utility service interruptions such as power outages, service failures, and fires resulting from contact with power lines; and (3) improved neighborhood aesthetics through the elimination of a heavy concentration of overhead electric lines and communication facilities.

13. The Town thereafter began a two-phased process of undergrounding its utility facilities. Phase I has since been completed (in 2016). Phase II, which includes North Ocean Blvd. south from Little Club Road to Golfview Drive and all areas west to the intracoastal waterway, began in or about the third quarter of 2016.

14. Part of the Town's obligations under its agreement with AT&T included placing conduit, handholes, and associated hardware to accommodate AT&T's installation of its underground facilities. To place the necessary hardware (conduits, handholes, etc.) for Phase II, the Town contracted with Wilco Construction, Inc. ("Wilco").

15. The Town also contracted with FPL and Comcast to place their respective electrical and cable/broadband facilities underground within the conduit and other hardware placed by Wilco. Comcast committed to underground its facilities in Phase II for approximately $160,000.

16. AT&T had previously completed the Phase I undergrounding of its telecommunications facilities for the contracted price of $161,450.38.

17. On May 20, 2016, the Town paid AT&T $25,000 to prepare a special construction quotation for AT&T's Phase II work. The parties agreed that the payment would be non-

refundable, but would be credited against the detailed special construction charge ultimately determined by AT&T. *See* Composite **Exhibit "A"**.

17. Thereafter, on December 14, 2016, AT&T delivered its detailed, proposed special construction charge of $420,581.79 to the Town along with a proposed agreement to complete the Phase II work.

18. The Town agreed to AT&T's proposal and, on May 9, 2017, the Town executed a Special Construction Agreement ("Agreement") by which AT&T agreed to place its aerial communications facilities underground in Phase II. A true and correct copy of the Agreement is attached as **Exhibit "B"**. *See* Agmt. at Exhibit 1.

20. AT&T expressly agreed to "use the conduits and handholes provided by the [Town]" and to "place additional handholes or conduits" "should the need arise." Agmt. at Ex. 1.

21. AT&T agreed to underground its tele communications facilities in Phase II based on a detailed special construction charge of $420,581.79, subject to change only for differing site conditions, force majeure events, or change orders requested by the Town.

22. The Town entered into the Agreement, which was heavily negotiated, having paid good consideration of $25,000 and in good faith reliance on AT&T's special construction charge for Phase II.

23. The parties agreed that should the Town initiate any changes to AT&T's scope of work under the Agreement, AT&T would provide the Town with a new special construction charge and the parties would be required to enter into a new contract. Agmt. at ¶ 16.

24. The Agreement also contains a differing site conditions provision standard to public works contracts, which would permit AT&T to charge the Town additional costs only if

5

it encountered unforeseeable conditions in the field that were materially different from the field conditions at the time AT&T provided the quote or the time that the Town executed the Agreement. Agmt. at ¶ 16.

25. The only other conditions that the parties agreed could alter the cost for the contracted work were above ground barriers and force majeure events like Acts of God and labor disputes that could not reasonably have been anticipated. Agmt. at ¶ 16.

26. The Town never initiated any changes to the scope of work to be provided by AT&T under the Agreement and, specifically, never executed any written change orders altering or expanding the scope of that work.

27. There were no conditions below the surface of the ground that AT&T could not have reasonably anticipated at the time it provided the special construction charge.

28. There were no above ground barriers that AT&T could not have reasonably anticipated at the time it provided the special construction charge.

29. There have been no Acts of God, labor disputes or any other force majeure conditions or circumstances that AT&T could not have reasonably anticipated at the time that it provided the Town the special construction charge.

30. Further, the Town never made any inaccurate representations to AT&T regarding the conditions in the field.

31. FPL completed its Phase II work installing its electrical facilities in the conduit placed by Wilco for the contracted price and without any notice to the Town of any differing site conditions necessitating unusual or extraordinary expense.

32. Comcast has also nearly completed its Phase II work installing its cable facilities in the conduit placed by Wilco for the contracted price and without any notice to the Town of differing site conditions necessitating unusual or extraordinary expense.

33. On information and belief, AT&T began to place its aerial facilities underground in Phase II in the spring of 2019, after Wilco had laid the conduit and placed the associated hardware, after FPL had undergrounded its electrical service utilities, and after Comcast had nearly concluded undergrounding its utilities.

34. AT&T appeared to actively perform under the Agreement for more than one year, from the spring of 2019 through the spring of 2020. During that time, AT&T never notified the Town that it had encountered site conditions in the field that it asserted were materially different from those existing when AT&T provided its proposed special construction charge or when the Town executed the Agreement and agreed to that charge, that it had encountered site conditions that purportedly necessitated any unusual or extraordinary expense, or that it had experienced any force majeure event that it claimed necessitated additional expense in performing its obligations under the Agreement.

35. Instead, on the few occasions where AT&T identified to the Town a purported need to place additional conduit, AT&T represented that that work would be done ***at no additional cost to the Town***.

36. For example, the Town Manager raised cost concerns to AT&T in June 2019 after AT&T represented that it had to bore new conduit, ostensibly because it had not been correctly installed by Wilco. In response, AT&T's representative George Thomas (who had formulated the special construction charge) responded and clarified to the Town Manager and its Undergrounding Project Manager in July 2019 that the Town would incur no additional costs

under the Agreement: *"You are not being charged for any deviations that we make."* A copy of the e-mail correspondence with George Thomas is attached as **Exhibit "C".**

37.  Later in the summer of 2019, Mr. Thomas's supervisor, AT&T Area Manager Anniken Patino appeared at a Town Commission meeting to provide a report. This was unusual because AT&T's management had largely declined numerous invitations to update the Town Commission on AT&T's progress.

38.  When Ms. Patino appeared on August 9, 2019, she informed the Town Commission that the *only* cable left to place was from Golfview to Banyan in a rear easement; that AT&T expected to conclude its work with sufficient time for new service to begin prior to December 2019; and that the old overhead poles and cables would be removed in December 2019.

39.  Ms. Patino did not advise the Town that AT&T had encountered any unusual field conditions or incurred or anticipated any additional costs that would alter the $420,581.79 special construction charge for Phase II.

40.  Notably, with nearly all of AT&T's facilities placed underground and only four (4) months of work remaining, Ms. Patino affirmatively represented to the Town Commission on August 9, 2019 that AT&T *"didn't expect any surprises."*

41.  By the Commission's next meeting, on September 13, 2019, AT&T advised the Town that it had to complete 2 to 3 bores as a result of deep conduit. Again, however, AT&T represented that it was replacing that conduit *at its own cost*.

42.  The Town thereafter understood that AT&T's Phase II work was nearing completion with no unanticipated issues and certainly no unexpected costs. During this entire time, *i.e.*, from the execution of the Agreement on May 9, 2017 through and including the date

of filing this action, the Town never requested any changes to the scope of work under the Agreement and never requested any change orders from AT&T. From the execution of the Agreement through and including April 28, 2020, AT&T never requested any change orders or authorization to perform additional work at the Town's expense. From the execution of the Agreement until at least April 28, 2020, the Town believed and understood that AT&T was proceeding to complete the work contemplated by the Agreement; in fact, until at least April 29, 2020, Town staff and the Town's Underground Project Manager observed that work was continuing on the installation of AT&T's new underground facilities in the conduit that the Town had installed in compliance with the Agreement.

43. On or about April 29, 2020, AT&T Area Manager Juan Lucas telephoned the Town Manager ostensibly to introduce himself as Ms. Patino's successor. With the Town and its residents under emergency orders resulting from the ongoing COVID-10 pandemic, Mr. Lucas casually remarked that the cost of AT&T's work had ballooned to "***well over a million dollars***." No prior notice in this regard had been provided.

44. Mr. Lucas made no attempt to justify the trebling of expenditures under the parties' Agreement. He threatened to stop working by stating that AT&T would cease performing under the Agreement until the Town agreed to enter into an entirely new contract reflecting this pricing.

45. The Town Manager immediately requested that AT&T provide an actual cost analysis comparison to the agreed-upon special construction charge, as well as information on the percentage of work completed by AT&T. Mr. Lucas responded that AT&T "does not have that information ready yet."

46. When Mr. Lucas finally responded in writing to the Town Manager -- more than two weeks later, on May 20, 2020 -- he still refused to provide any detailed cost comparison to

the contract price. Nor did he estimate the percentage of work to be completed. This information has never been provided to the Town.

47. Mr. Lucas instead purported to summarize various instances where AT&T claims to have discovered infrastructure that "was not as agreed upon." Mr. Lucas failed to attribute any actual costs to each instance of additional work or to identify when the work was performed. He simply represented that AT&T has incurred $1,100,000 in actual costs through May and anticipates costs anywhere from $100,000-300,000 to complete the project. Included in Mr. Lucas' summary is work that AT&T affirmatively represented to the Town back in July 2019 would be completed at no additional cost. A copy of Mr. Lucas' May 20, 2020 correspondence and summary is attached as **Exhibit "D"**. Through and including the date of this filing, AT&T has never submitted a change order request or anything identified as such. Moreover, AT&T has not provided any invoices for work that it claims to have done.

48. AT&T never gave the Town any advance notice that it would seek to recover ***nearly one million dollars more*** than the special construction charge that it proposed and to which the Town agreed for any of the work identified in Exhibit "D". Instead, for at least some of that work, AT&T affirmatively represented to the Town that it would ***not be charged*** anything additional.

49. The Agreement by its terms cannot be orally modified and the doctrine of sovereign immunity protects municipal governments like the Town from any liability for additional work performed other than pursuant to a written change order.

50. Just 10 days before the June 1 official start of hurricane season, AT&T confirmed to the Town on May 20, 2020 that its work on Phase II "*is currently stopped*."

51. All conditions precedent to this civil action have been performed, waived, or otherwise occurred.

52. The Town has enlisted the undersigned counsel to prosecute this action on its behalf. The Agreement entitles the Town to recover from AT&T all of its costs and expenses incurred in bringing this action including, but not limited to, its reasonable attorneys' fees. Agmt. at ¶ 13.

## COUNT I
## Breach of Contract – Specific Performance

53. The Town hereby re-alleges and incorporates the allegations of paragraphs 1 through 52.

54. The Town has performed all of its obligations under the Agreement.

55. The terms of the Agreement require AT&T to perform.

56. AT&T has materially breached the Agreement by its outright refusal to perform.

57. As a result of AT&T's breach, the Town has suffered and continues to suffer significant injury. While underground utilities reduce the risk of accidents caused by lines, which can be brought down by storms causing power outages, the Town also sought the aesthetics of a community no longer plagued by unsightly wires.

58. Because AT&T has a property interest in its facilities already placed underground in the Town and because any telecommunications or similar facilities to be placed in the conduit installed by the Town would necessarily be AT&T's property at the end of the project, the Town cannot simply engage another contractor to complete AT&T's work and then sue AT&T for the damages incurred in completing the project. The completion of AT&T's work is required to fully and finally complete Phase II and remove the remaining overhead poles, wires, and overhead accessories in the Town. Money damages therefore cannot adequately remedy AT&T's breaches.

59. To the extent that AT&T asserts that it is entitled to any additional compensation under the differing site conditions provision of the Agreement, AT&T must continue to perform according to the terms of the Agreement until that differing site conditions dispute is settled.

60. Failure to order AT&T to specifically perform under the Agreement would cause the Town unreasonable hardship by, among other things, maintaining overhead wooden poles that constitute a safety hazard to the Town.

WHEREFORE, Plaintiff, Town of Gulf Stream, prays that this Court will enter judgment in its favor, compelling AT&T to specifically perform under the Agreement for the agreed upon special construction charge, awarding the Town all of its costs and expenses (including its reasonable attorneys' fees), and granting the Town such additional relief as the Court deems just and appropriate under the circumstances.

## COUNT II
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201

61. The Town hereby re-alleges and incorporates the allegations of paragraphs 1 through 52.

62. The Town seeks a judicial determination of the rights and obligations of the parties under the Agreement pursuant to 28 U.S.C. § 2201.

63. There is a real, immediate and continuing controversy between the Town and AT&T. Specifically, AT&T claims that it is entitled to cease undergrounding its communications facilities in the Town and otherwise performing under the Agreement until and unless the Town enters into a new contract committing the Town to pay AT&T $1,060,000 for work already performed and agreeing to pay AT&T an additional $100,000-$300,000 over and above its claim for $1,060,000 to complete the project.

64. The Town denies, refutes and rejects AT&T's claim and maintains that all of the work identified by AT&T in Exhibit D and for which it seeks additional compensation was or should have been either: (a) reasonably foreseeable or fully known or knowable by AT&T at the time that it provided and the Town agreed to the special construction charge; (b) not incurred as the result of any alleged differing site conditions; (c) unnecessarily incurred; or (d) extra-contractual work undertaken by AT&T without any notice given to the Town or written authorization from the Town.

65. There exists a bona fide dispute between the parties which requires an actual and present need for a judicial declaration.

66. The requested judicial declaration will deal with a present, ascertained or ascertainable state of facts or with a present controversy as to a state of facts.

67. The antagonistic and adverse interests are all before this Court and the relief sought is not merely the giving of legal advice by the courts or the answers to questions propounded by curiosity.

68. The Town has suffered actual and/or threatened injury as a result of AT&T refusing to complete the undergrounding project.

WHEREFORE, the Town prays that this Court will declare and adjudge the following:

a. That AT&T has no right to unilaterally modify the terms of the Agreement or to insist that the Town enter into a new Agreement.

b. That AT&T encountered no differing site conditions or any force majeure events that would entitle it to any additional compensation under the Agreement.

c. That the doctrine of sovereign immunity precludes AT&T from recovering for any extra-contractual work undertaken by AT&T without a written change order or other written authorization from the Town.

d. That this Court award the Town the costs and expenses, including reasonable attorneys' fees, that it has incurred in prosecuting this declaratory action.

e. That this Court award the Town such further and additional relief as it deems just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

The Town of Gulf Stream demands a jury trial on all issues to which it is so entitled.

> JONES FOSTER P.A.
> Attorneys for Plaintiff
> 505 South Flagler Drive, Suite 1100
> West Palm Beach, FL  33401
> Telephone: 561-659-3000
> Fax: 561-650-5300
>
> By: /s/ Joanne M. O'Connor
>     Scott G. Hawkins
>     Florida Bar No. 0460117
>     shawkins@jonesfoster.com
>     Joanne M. O'Connor
>     Florida Bar No. 498807
>     joconnor@jonesfoster.com
>     Michael J. Gore, Esq.
>     Fla. Bar No.: 71886
>     mgore@jonesfoster.com

P:\DOCS\13147\00094\PLD\20F5689.DOCX